MILLER, Judge
(dissenting).
I would order the immediate return of these children to their father’s custody. In my opinion the record does not support the decision to remove the children. The trial judge summed up his conclusion (and mine) in his ruling at Tr. 173 by saying that “. . . it is not my intention at all to make any finding of unworthiness on the part of (the father). * * * I think maybe he overindulgenced the children over the years. * * * He loved not wisely but too well.” These findings and conclusions do not support removal of children from their parent because of neglect.
The complaints filed by Charles Olivier, the long time neighbor and friend of the family, were sufficient to require an investigation by the Child Welfare Department of the Department of Public Welfare. This type investigation was not requested but instead the investigation was undertaken by the trial judge. I find it difficult to accept that the trial judge who is to judge the case can properly act as investigator, can call and interrogate witnesses, can conduct an active cross examination of the father and all his witnesses, and also have himself sworn so that his testimony will be in the record. This could lead to a denial of the parent’s right to procedural due process.
I cannot accept the finding that a parent’s right to custody of children is not dignified by the rights which are admittedly his when defending a ten dollar claim or defending against a misdemeanor charge. In these cases, hearsay evidence is not admissible and the party is entitled to confront his accusers.
During the course of the trial judge’s testimony, the trial judge explained why (in the early morning hours of February 7, 1972) the parent “voluntarily went to the priests’s home and he spent the rest of the night there.”[1] At Tr. 171, the trial judge testified that based on his conference with Olivier and the child, “I wanted to separate Dr. Toler from his children for that night, at least.” He made arrangements (without giving the parent an opportunity to explain or comment) to place all six children with Olivier and Olivier’s family, Olivier stated that he might be bothered by the parent so the trial judge decided he would arrest the parent. “I wasn’t arresting him for arrest purposes, I was going to arrest him to keep him from going over and bothering the Oliviers, and after we got over there and talked it over, we made the arrangement where he went and spent the night with Father Sylvester.” I find nothing voluntary about the doctor’s action in going to the priests’ home for the remainder of the night. I suggest that the parent’s constitutional rights were violated.
When the judge arrived at Dr. Toler’s home about midnight he found conditions at the home calm and peaceful.[2] The doc *667 tor was “apparently unconcerned over the fact that the boy had run away from the premises following the firing of the pistol, and that he had not returned by midnight.” [3] The record convinces me that the parent was justified in assuming that Frankie had gone to the Olivier home. Frankie’s usual pattern was to go to the Olivier home anytime he was corrected or asked to clean up after himself. The parent pled with Olivier a few days before this incident to cooperate by not encouraging their 12 year old boy to go to his home anytime and everytime he didn’t get his way.
If the hearsay testimony was based on valid facts, a medical examination is indicated. This record does not suggest that the court attempted to get a medical evaluation of the parent. On the contrary, the parent introduced medical testimony establishing that he is well and able to properly raise his children.
I think the trial judge and now this court has placed this parent in an intolerable position. Anytime one of his children resists proper discipline, the child can walk away from home and the parent is condemned and loses custody of all children. When the parent remonstrates, he is “unusually excited” and may “become dangerous”.
If there is some medical basis for the conclusion that “the welfare and best interest of the Toler children will be served by removing them, at least temporarily, from the custody of respondent”, it should be placed in the record. Hearsay or suspicion should not be sufficient.
If the evidence in this record justifies removal of children because of neglect, a child can easily set up his parents for similar action. I submit that this record would support a finding of delinquency on the part of one or more of the children that refuse to obey and choose instead to run away.
I respectfully dissent.

. Quotation from paragraph 6 of majority opinion.

. The “unkept condition” of the home referred to in paragraph 30 (and also in *667 paragraph 21) of the majority opinion is also explained by the fact that the clothes washing machine broke down during the week-end. Some nine loads of washing was required each day to keep up with the needs of the family.

. Quotation from paragraph 25 of majority opinion. It is interesting to note that here the parent is condemned because he was not upset about his son’s absence from the home. But at paragraphs 8 and 33, he is considered “unusually excited” and had “become dangerous” because he was upset when the trial judge and a deputy sheriff came to his house at 1:30 a. m. to take over the household because the oldest daughter walked out of the house when told she must take a bath. The majority fails to mention that the other children complained that the oldest daughter had not bathed for two weeks. I find nothing unreasonable about the doctor’s reaction to the 1:30 a. m. visit.